### 15083

### BOSEMAN v. PACIFIC MILLS *ET AL.*

(8 S. E. (2d), 878)

November, 1939.

*Messrs. Nelson, Mullins & Grier,* for appellants,

*Messrs. C. T. Graydon* and *John Grimball,* for respondent,

May 9, 1940.

The opinion of the Court was delivered by MR. JUSTICE CARTER:

This appeal involves two claims for compensation under the South Carolina Workmen's Compensation Act, one made by Mrs. Clydia Brown Springs on behalf of her infant child, James Everette Brown, son and only dependent of M. E. Brown, and the other by Mrs. M. J. Nichols, guardian *ad litem* for James Melvin Boseman, the son and only dependent of Archie Boseman. M. E. Brown and Archie Boseman were burned to death on April 19, 1939, when for some unknown reason a water tank at the Granby Plant of the Pacific Mills, in Columbia, S. C., on which they were painting, caught fire and exploded. The defendants denied the claims on the grounds that Archie Boseman and M. E. Brown were not employees of the Pacific Mills and were not engaged in any work which was a part of the trade, business or occupation of the mills within the meaning of Section 19 of the Compensation Act, 39 St. at Large, 1242.

By consent the two cases were consolidated and heard together, on June 21, 1939, before Commissioner Coleman C. Martin, who held that compensation is due claimants. The South Carolina Industrial Commission, upon defendants' application for review before it, confirmed Commissioner Martin's holding. Upon appeal to the Court of Common Pleas, Judge Dennis affirmed the award of the full Commission.

Defendants have consented that, as both claims grow out of the same accident and as the same issue is raised on ap-

peal, the opinion of this Court in the case of Archie Boseman shall be binding and controlling as to the companion case of M. E. Brown.

The only question for our consideration and decision "is whether the deceased, Archie Boseman, at the time of his death, was performing work which was a part of the trade, business or occupation of the Pacific Mills, which would entitle his dependent to compensation under Section 19 of the South Carolina Workmen's Compensation Act." Appellants contend that this question must be answered in the negative for the reason that "Archie Boseman was an employee of one Jack Martin, an independent contractor, and was not an employee of Pacific Mills within the contemplation of the Workmen's Compensation Act."

Section 19 of the South Carolina Workmen's Compensation Act, under which the claims are made, is as follows: "Where any person (in this section referred to as 'owner'), undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any work- man employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him."

On April 3, 1939, the Pacific Mills entered into a contract with one Jack Martin, to paint the water tank in question; this contract provided that the mill would supply the materials for the work but that Martin would furnish the "tools, ropes and rigging." It also provided that "it is further understood that the undersigned contractor is an independent contractor and is in no sense an employee of Pacific Mills or any of its officers." It, however, contained a postscript that "the above work is all subject to inspection and approval by representatives of Pacific Mills." Jack Bose-

man and M. E. Brown were employed to assist in the painting of the tank and were so employed when the accident occurred which resulted in their death.

Commissioner Martin held that the work which Archie Boseman was doing "was in the interest of the principal in this case, the Pacific Mills, and which was being done at the direction of Jack Martin, a subcontractor, who hired this claimant along with others to assist in painting, scraping, remedying and repairing stands, tanks, subsidiary tanks and other properties belonging to the Pacific Mills, and which was a part of their operation in the City of Columbia; which tanks were used as a protection against fire and supplying the necessary water needed in the operation and pursuit of trade of this manufacturer, which was required and which has been very ably explained by his Honor, Judge G. Dewey Oxner, in elaborating upon Section 19 of the South Carolina Workmen's Compensation Act in the case which has been later decided by the Supreme Court of the State of South Carolina, entitled *Marchbanks v. Duke Power Company,* which is so parallel in every respect to the actual facts and legal interpretations to this particular case that this commissioner feels that no other citation of reasons for conclusions of law need be given in sustaining his interpretation of the law and for making the following award." In his order, Judge Dennis said that "it is my opinion that the case is controlled by the case of *Marchbanks v. Duke Power Company et al.,* 190 S. C., 336, 2 S. E. (2d), 825."

Appellants contend that the Marchbanks decision is not decisive or controlling of the issue raised here, but that, on the contrary, the facts of that case are easily distinguishable from the facts in the case at bar, in that, (1) while the water tank may have been useful for fire protection for the mill property, it was in no sense used in, and was not necessary or essential to the operation of the defendant's, Pacific Mills', manufacturing business, whereas the poles being painted there were a necessary and essential part of the power com-

pany's business; and (2) that the work of painting and of maintaining the tank, due to its height above the ground of from 125 to 130 feet, was of such a dangerous and unusual nature that it was never done by the regular employees of the mill but on the contrary, had always been let out by contract to an experienced steeplejack who made a specialty of this kind of work, whereas in the *Marchbanks case* the poles were not of an unusual height and no particular skill or special equipment was necessary to paint them, the power company's regular employees usually doing the work.

We agree with the conclusions of law reached by Commissioner Martin, which were confirmed by the South Carolina Industrial Commission and thereafter affirmed by Judge Dennis. The testimony was to the effect that the mill furnished all the paint, the ladders and any lumber or scaffolding necessary to do the work. As already seen, the contract itself contained a postscript that "the above work is all subject to inspection and approval by representatives of Pacific Mills." The tank was an integral part of the mill business. There was also testimony to the effect that the mill desired that the work on the inside of the tank be completed as soon as possible so that its everyday, ordinary service, that of fire protection, could be resumed, it being shown that the mill depended upon this tank for such protection. The very nature of the work done by the mill, that of the manufacture of cotton into cloth, especially required the best of protection against fire. Hence, this tank was particularly necessary and essential in the operation and carrying on of the business of the mill. It, therefore, follows that the painting of the tank was such a part of the trade, business or occupation of the Pacific Mills as would constitute Martin a subcontractor, and thus render the mill liable to the beneficiary of Boseman for payment of compensation.

In view of the above holding, the second fact which appellants rely upon to distinguish the case at bar from the *Marchbank case,* has no deciding value.

All exceptions are overruled and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM, MR. JUSTICE FISHBURNE and MR. ACTING ASSOCIATE JUSTICE E. H. HENDERSON concur.

MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON concurs in result.