15288

SMITH *ET AL. v.* FULMER *ET AL.*

(15 S. E. (2d), 681)

92

*Mr. Stephen Nettles,* of Greenville, for appellants,

*Mr. Robert L. Gray,* of Laurens, for respondents,

July 3, 1941.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE L. D. LIDE.

This is a workmen's compensation case, and the testimony is not printed in the record, but we quote the following from the "statement" in the Transcript, which gives the material facts of the case and states the single question involved in this appeal:

"C. D. Fulmer had a contract with the State Highway Department to build a concrete bridge over a railroad track at Roebuck, S. C. He sublet to M. G. Sherard the work of making the fills and laying the concrete paving. The fills were made and the bridge completed and Sherard was making ready to lay the paving at the end of December, 1939. Sherard hired a foreman who was skilled in laying concrete paving, and he came to the job with three or four Negro laborers who also were experienced in that sort of work. The deceased, Uzer Smith, was one of these Negroes. As soon as the necessary preliminary arrangements could be made Sherard expected to hire some twenty-five or thirty other laborers to assist in laying the paving.

"Before the actual laying of the paving commenced Sherard planned to bring some equipment he owned to the job, some of which was in Spartanburg and some in Greenwood. Right after Smith came on the scene of the job Sherard sent his foreman, the deceased and another employee on his (Sherard's) truck to Spartanburg and got the equipment there. For one or two days immediately after that Smith worked at the scene of the job connecting up a water pipe line and doing other things preliminary to the laying of the paving. Then (on December 30, 1939) Smith went with Sherard's foreman and another employee on Sherard's truck to Greenwood to get the equipment there, which included a concrete bin. When loaded on the truck the bin stood up rather high and when the truck was passing through the village of Ora, S. C., on the return trip the top of the bin came in contact with a wire stretched across the highway, and Smith was dragged or thrown off the truck and crushed

to death under the wheels of the truck. Ora is twenty miles from Roebuck, the scene of the job. Owing to the bad weather which set in about this time the work of laying the paving had to be postponed, and it was March, 1940, before any of the paving was actually laid.

"The only question presented by the appeal from the order sustaining the award is whether the general contractor (Fulmer) is liable for the death of the sub-contractor's (Sherard's) employee under Section 19 (a) of the Workmen's Compensation Act (Act July 17, 1935, 39 St. at Large, p. 1242). More specifically stated, the only inquiry is whether Uzer Smith was 'employed in the work' of the general contractor at the time of his death."

The mother and other dependents of Uzer Smith, deceased, filed their claim for compensation, which was heard before Commissioner Duncan, whose opinion and award was in favor of the claimants. Thereafter upon review by the full commission the opinion and award of Commissioner Duncan was affirmed. An appeal was taken to the Court of Common Pleas which came on to be heard before Judge Featherstone, who handed down his order dated April 2, 1941, confirming the award of the Industrial Commission in every respect, and from the judgment entered thereon the instant appeal was taken by C. D. Fulmer, contractor, and American Mutual Liability Insurance Company, insurance carrier.

Section 19(a) of the Workmen's Compensation Act ██ contains several paragraphs, but the pertinent one is the second paragraph, which is as follows:

"Where any person (in this section referred to as 'contractor') contracts to perform or execute any work for another person, which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (in this section referred to as 'subcontractor') for the execution or performance by or under the subcontractor of the whole or any part of the work undertaken by such contractor, the contractor shall be

liable to pay any workmen employed in the work any compensation under this Act which he would have been liable to pay if that workman had been immediately employed by him."

Under the language above quoted the contractor, Fulmer, is liable, provided the deceased employee, Uzer Smith, was at the time of his death "employed in the work," that is to say, "the work undertaken by such contractor." The work undertaken by Fulmer was the building of a concrete bridge for the State Highway Department, which included making fills for the approaches to the bridge and laying concrete paving over the approaches and the bridge, and the subcontractor, Sherard, contracted with Fulmer to make the fills and lay the concrete paving. Sherard's foreman hired Smith to assist in laying the concrete paving, the kind of work he was qualified to do, the same being semi-skilled work.

It is apparent from the facts above stated that while at the time Smith met his death he was not actually engaged in laying the paving, he was engaged in the preliminary work essential thereto. In other words, he was assisting in transporting the concrete bin or mixer which was required for the accomplishment of the work, and, as stated in Judge Featherstone's order, was subsequently used therein. It is earnestly argued, however, by counsel for the appellants that Fulmer was in no way concerned with such preparation for the performance of the job which Sherard agreed to perform as subcontractor. And it is further argued that Fulmer, the contractor, is liable to an employee of Sherard, the subcontractor, only if and when such employee is employed in accomplishing the result undertaken by the contractor; and the inference is sought to be drawn that the transportation of machinery by Sherard's employees from a somewhat distant point to the situs of the job was not related to the accomplishment of such result. To quote from appellants' argument: "It was a matter of importance to Sherard but of no concern to Fulmer." It was a matter of importance to Sherard, because it was definitely related to the performance

of his obligation to Fulmer, but we think it was therefore of concern to Fulmer, because when Sherard performed his obligation that completed a part of Fulmer's obligation to the State Highway Department.

It seems to us that the true test is: Was the employee doing something for the subcontractor which bore some reasonably direct relation to the performance "of the work undertaken" by the contractor? The subcontractor, Sherard, simply stepped into the shoes of Fulmer with reference to the work of making the fills and laying the concrete paving. We think the admitted facts demonstrate that Smith, the deceased employee, was employed in the work which Sherard had agreed to perform for Fulmer, and hence under the terms of the statute Fulmer is liable just as if Smith had been immediately employed by him, for he was actually doing Fulmer's work, that is to say, he was actually doing something which was essentially related to the fulfillment of the contract made by Fulmer with the State Highway Department.

This particular part of Section 19(a) does not appear to have heretofore been directly before this Court, but the first paragraph thereof relating to the obligation of the owner to employees of a subcontractor was involved in the case of *Marchbanks v. Duke Power Company,* 190 S. C., 336, 2 S. E. (2d), 825, and *Boseman v. Pacific Mills,* 193 S. C., 479, 8 S. E. (2d), 878. These cases are not precisely in point upon the facts of the instant case, and, as above stated, they do not relate immediately to the second paragraph of Section 19(a); but the fundamental principles laid down are quite apposite. In the *Marchbanks case* the Circuit order by Judge Oxner reviews the authorities from other states elaborately and lucidly, and the well-considered opinion of this Court was delivered by Mr. Justice Bonham, now Chief Justice. As therein stated. (190 S. C., 336, 2 S. E. (2d), 836): "The primary purpose of a workmen's compensation act is to protect the workman who actually does the work." And paraphrasing other language

contained in the opinion, we think it may appropriately be said with reference to the instant case : It is easily conceivable that a contractor may let a part of the work to be done to others who are financially irresponsible, and that an employee of such subcontractor who is injured while doing the work might be left without remedy. It is hence the clear purpose of the act to make the contractor, the person who originally contracted to have the work done, liable to the subcontractor's employee so injured.

And the opinion in the *Marchbanks case* reminds us ▮ that while the language of the statute is plain and unambiguous, there are so many different factual situations which may arise that no easily applied formula can be laid down for the determination of all cases. In other words, "it is often a matter of extreme difficulty to decide whether the work in a given case falls within the designation of the statute. It is in each case largely a question of degree and of fact." These words are from a Connecticut case, *Fox v. Fafnir Bearing Co.,* 107 Conn., 189, 139 A., 778, 58 A. L. R., 861, and are taken from an excerpt quoted with approval in the Marchbanks opinion.

In the later case of *Boseman v. Pacific Mills, supra,* this Court sustained the order of Judge Dennis holding the owner liable upon the ground that the case was controlled by the Marchbanks decision.

There are a great many authorities tangent to the ▮ question involved here cited in the annotations which will be found in 58 A. L. R., 872, and 105 A. L. R., 580. But these cases from other jurisdictions arose under statutes containing all sorts of varying terms and provisions. Indeed, there seems to be very little uniformity in the numerous statutes on this subject. Some of them appear to have been intended to lessen the obligations of the principal contractor to employees of the subcontractor and to make the principal contractor liable only for work done under his more immediate supervision and control. But obviously this is not the purpose of our own statute. More-

over, it will appear that many legislative acts provide that the work being done at the time of the injury must be "performed in, on, or about the premises" under the control of the principal contractor. 71 C. J., 490. But the very fact that such a provision is omitted from our statute is quite significant as indicating that the legislative intent was that the principal contractor should be held liable to any workman "employed in the work," who was doing something in furtherance of the work, whether at the time of the accident he was actually on the premises or not.

We concur in the conclusion expressed by Judge Featherstone in his order, as follows:

"The defendants' contention that the deceased was not engaged in the work but was approximately twenty miles from the place where the paving work was to be done when he met his death cannot be sustained for the reason that he was carrying out the orders of his superiors in transporting from Greenwood the concrete mixer which was necessary in doing the work contracted for by C. D. Fulmer and was thereafter actually used for that purpose."

(This appeal also originally involved another order of Judge Featherstone directing the immediate payment of the amount of the award up to April 1, 1941, under the provisions of the Compensation Act relating to supersedeas on appeals to the Court of Common Pleas, but that matter has heretofore been disposed of by the order of this Court dated June 4, 1941.)

The judgment of the Circuit Court is affirmed.

Mr. Chief Justice Bonham and Messrs. Associate Justices Baker, Fishburne and Stukes concur.