16237

YOUNGINER v. J. A. JONES CONST. CO. *ET AL.*
(54 S. E. (2d) 545)

*Messrs. McKay & McKay,* of Columbia, *for Appellants,*

*Mr. John Gregg McMaster,* of Columbia, *for respondent,*

July 13, 1949.

OxNER, Justice.

The question involved on this appeal is whether claimant, Eddie L. Younginer, after having procured and accepted compensation under the Workmen's Compensation Act of Tennessee, Code § 6851 *et seq.,* for personal injuries sustained in that State, may now recover the benefits allowed by the Workmen's Compensation Act of South Carolina, Code 1942, § 7035-1 *et seq.,* after crediting same with the amount awarded under the Tennessee Act.

In October, 1940, claimant, a resident of this State, was employed as a sheet metal worker by a subcontractor, Interstate Roofing Company, on a construction job at Fort Jackson, South Carolina, upon which the J. A. Jones Construction Company was the general contractor. After working for three or four months at Fort Jackson, claimant was transferred by the Interstate Roofing Company to Spartanburg where Camp Croft was being constructed. After the completion of this work, he, while still in the employ of the Interstate Roofing Company, worked at the following places: Fort Smith, Arkansas; Ozark, Alabama; Panama City, Florida; Gulfport, Mississippi and Knoxville, Tennessee. The J. A. Jones Construction Company was the prime contractor on all these jobs. After the work at Knoxville was completed, claimant, in April, 1944, secured employment as a sheet metal worker with G. G. Ray, who was doing construction work as a subcontractor of J. A. Jones Construction Company on the atomic bomb project at Oak Ridge, Tennessee. The subcontract was finished in January, 1945, at which time claimant was employed directly by the prime contractor, J. A. Jones Construction Company, for work on the project at Oak Ridge. On March 18, 1945, while so employed, he sustained a deep laceration between the little finger and ring

finger of his left hand. It became necessary to amputate the little finger.

J. A. Jones Construction Company carried workmen's compensation insurance with the Aetna Casualty & Surety Company. All medical, surgical and hospital expenses were paid by the carrier. It also paid claimant the sum of $270.00 which represented the benefits allowed by the Tennessee Act for the loss of a little finger. A disagreement arose, however, between the parties "as to whether said injuries have resulted in any permanent disability to the left ring finger and, if so, the extent thereof." A compromise agreement was reached whereby claimant agreed to accept the additional sum of $225.00 in full settlement of all claims growing out of said accident. Thereupon, a joint petition for approval of this agreement was filed by claimant and the carrier in the Circuit Court of Tennessee. The matter was heard in open court upon oral testimony and on August 15, 1946, an order was filed wherein the Court found that the compromise settlement was reasonable and should be ratified and confirmed. It was accordingly adjudged that the claimant recover of the carrier the sum of $225.00, together with the costs of the proceeding, "in full and final settlement and discharge of all of his claims, demands, actions or causes of action against the said J. A. Jones Construction Company, Inc., and the petitioner Aetna Casualty and Surety Company, growing out of the matters referred to herein and in said petition." The sum mentioned was duly paid to the claimant.

On June 25, 1946, claimant, through his attorney, filed a claim with the South Carolina Industrial Commission for benefits under the Workmen's Compensation Act of this State on account of the injury sustained in Tennessee. No reference was made in the Tennessee court proceedings to the pendency of this claim before the South Carolina Industrial Commission. At a hearing on the claim filed with the South Carolina Industrial Commission held on January 9, 1947, the carrier and employer objected to the jurisdiction of

the Commission, asserted that the claim was barred because not filed within one year after the accident, and claimed that the recovery sought was barred as *res judicata* by the Tennessee award. The single Commissioner decided all of these issues adversely to the carrier and employer and awarded claimant the sum of $87.50 "for permanent partial disability of the left ring finger", and the "sum of $105.00 for loss of the left little finger." The total amount awarded represented the difference between the benefits paid to claimant under the Tennessee Act and the benefits to which he was entitled under the South Carolina Act. There was further awarded to claimant the sum of $650.00 for serious bodily disfigurement. It appears that no allowance for disfigurement is permitted by the Tennessee Act. The award of the single Commissioner was duly approved by the full Commission. The carrier and employer appealed to the Circuit Court where. the award was affirmed. This appeal followed.

The only question we need determine is whether the South Carolina Industrial Commission had jurisdiction. In doing so, we are not bound by the factual findings of the Industrial Commission, but are required to review the evidence and determine the jurisdictional facts in accordance with our view of the preponderance of the evidence. *Tedars v. Savannah River Veneer Company,* 202 S. C. 363, 25 S. E. (2d) 235, 147 A. L. R. 914; *Miles v. West Virginia Pulp and Paper Co.,* 212 S. C. 424, 48 S. E. (2d) 26; *Watson v. Wannamaker & Wells, Inc.,* 212 S. C. 506, 48 S. E. (2d) 447; *Holland et al. v. Georgia Hardwood Lumber Company et al.,* 214 S. C. 195, 51 S. E. (2d) 744.

The right of claimant to receive compensation under the South Carolina Act is governed by Section 7035-39 of the 1942 Code, which is as follows: "Where an accident happens while the employee is employed elsewhere than in this State which would entitle him or his dependents to compensation if it had happened in this State, the employee or his dependents shall be entitled to compensation, if the contract

of employment was made in this State, if the employer's place of business is in this State, and if the residence of the employee is in this State; provided his contract of employment was not expressly for service exclusively outside of the State: provided, however, if an employee shall receive compensation or damages under the laws of any other State nothing herein contained shall be construed so as to permit a total compensation for the same injury greater than is provided for in this article."

In analyzing this section, the Court in *Price v. Horton Motor Lines*, 201 S. C. 484, 23 S. E. (2d) 744, 745, said, "that there are four prerequisites to the South Carolina Industrial Commission having jurisdiction: (1) The contract of employment must be made in this State; (2) the employer's place of business must be in this State; (3) the residence of the employee must be in this State; and (4) the contract of employment must be for services to be performed not exclusively outside of this State." Also, see *Tedars et al. v. Savannah River Veneer Co., supra.*

Appellants contend that none of the above conditions exists in the instant case. It is sufficient to say, however, that it clearly appears that the contract under which claimant was working at the time of the accident was made in Tennessee. The only contract which he entered into in South Carolina was with the Interstate Roofing Company. This employer-employee relationship continued for three or four years and terminated at Knoxville, Tennessee, in April, 1944, when it was superseded by a contract of employment with G. G. Ray. Neither of the contracts mentioned created the relation of master and servant between claimant and the principal contractor. He did not become an employee of the J. A. Jones Construction Company until January, 1945, or a few months before he was injured.

Our attention is called to certain testimony to the effect that in Tennessee all employees of subcontractors were processed or hired through the personnel department of the J.

A. Jones Construction Company, but it is not shown that claimant was employed in this manner at Fort Jackson. Assuming that he was, however, this fact does not establish employment by the J. A. Jones Construction Company. The evidence shows that the procedure mentioned was necessary to maintain proper relations with the unions and to assure compliance with governmental regulations then in effect relating to the hiring of employees and transferring them from one job to another. Each employee had to be cleared through local unions and also in accordance with the regulations of the War Manpower Commission. The maintenance of some central clearing place was essential to the discharge of the functions mentioned. There is no testimony showing that J. A. Jones Construction Company had any voice in fixing the terms of employment contracts made by its subcontractors or that it had any control over their employees.

Both the Industrial Commission and the Court below reached the conclusion that the contract of employment was made in South Carolina on the theory that under Section 19 of the original Act, now Section 7035-22 of the Code, when claimant was hired by the Interstate Roofing Company, he thereby entered into a contract of employment with the J. A. Jones Construction Company. It is stated in the order of the Court below that by virtue of this section, claimant "was under the protective wing of J. A. Jones Construction Company" during the entire period of his employment on these government projects. The pertinent portion of this section is as follows: "Where any person  *  *  *  contracts to perform or execute any work for another person  *  *  *  and contracts with any other person (in this section referred to as 'subcontractor') for the execution or performance by or under the subcontractor of the whole or any [part] of the work undertaken by such contractor, then the contractor shall be liable to pay to any workman employed in the work any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him."

The foregoing provision, which is similar to that contained in many compensation statutes, imposes liability upon parties who are not in privity of contract and causes one of them, sometimes referred to as the statutory employer, to be liable for accidents for which he may in no way be responsible. This enactment is predicated upon the fact that no contractual relation, such as master and servant, exists between the principal contractor and the workman. It was intended to extend compensation protection to all employees working on the job undertaken by the principal contractor. The primary purpose was to protect the employees of any subcontractors who were not financially responsible. *Marchbanks v. Duke Power Company et al.,* 190 S. C. 336, 2 S. E. (2d) 825; *Smith et al. v. Fulmer et al.,* 198 S. C. 91, 15 S. E. (2d) 681; *Hopkins v. Darlington Veneer Co. et al.,* 208 S. C. 307, 38 S. E. (2d) 4.

The liability imposed upon the principal contractor by the terms of Section 7035-22 is secondary in nature. Other provisions of this section expressly give the principal contractor the right of indemnity from his subcontractor in the event he is required to pay compensation to an employee of a subcontractor; and when the principal contractor is sued by a workman of a subcontractor, he is given the right to call in such subcontractor as a co-defendant. The record shows that during claimant's employment at Fort Jackson, the Interstate Roofing Company carried compensation insurance with the American Mutual Liability Insurance Company.

It is difficult to see on what theory the foregoing section has any application to the facts of this case. The job at Fort Jackson, as well as the other subcontracts of the Interstate Roofing Company, had long since been completed before the injury occurred. Obviously, no liability growing out of this injury rests upon the Interstate Roofing Company or its insurer. Any relation created between claimant and J. A. Jones Construction Company by virtue of

Section 7035-22 had long since ceased to exist at the time of this accident. Claimant was then under an entirely new contractual relation created at Oak Ridge, Tennessee, when he was directly employed by the J. A. Jones Construction Company. His right to compensation grows out of this contract and not out of the contract of employment which he made in South Carolina with the Interstate Roofing Company. We do not think that when a workman is hired by a subcontractor, he thereby enters into a "contract of employment" with the principal contractor. The liability imposed upon the principal contractor by the terms of Section 7035-22 is not contractual in nature.

For the foregoing reasons, we think the South Carolina Industrial Commission was without jurisdiction. In view of this conclusion, the other questions raised by appellants need not be determined.

The judgment appealed from is reversed and the case is remanded for entry of judgment in favor of appellants.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.