16564

BENBOW v. EDMUNDS HIGH SCHOOL *ET AL.*

(67 S. E. (2d) 680)

364

Messrs. *Reynolds & Reynolds,* of Sumter, *for Appellant,*

Messrs. *Nash & Wilson,* of Sumter, *for Respondent,*

November 15, 1951.

OXNER, Justice.

This is an appeal from an order of the Court below affirming a finding of the Industrial Commission that appellant, D. J. Benbow, was not entitled to recover benefits under the Workmen's Compensation Act for injuries received by him while doing certain repair work at the Edmunds High School, in the City of Sumter. The claim for compensation was denied upon the grounds (1) that the employment was casual, and (2) that the work in which appellant was engaged at the time of his injury was not a part of the "trade, business, or occupation" of said school.

The facts are undisputed and are substantially as follows:

Appellant was a regular employee of E. H. Rhame, Jr., an electrical contractor in the City of Sumter, who did not operate under the Workmen's Compensation Act. On December 2, 1947, he was sent by his foreman to the Edmunds High School to repair a fluorescent light. Rhame's firm had previously been called upon occasionally by the school authorities to do electrical work. The school kept its own maintenance crew, described by the superintendent as "jack-leg carpenters", for the purpose of doing ordinary maintenance work, but these employees were unable to do the work which appellant had been sent to perform. While engaged in repairing the light fixture, appellant was injured in a fall from his step-ladder. The record does not disclose the amount of time required to repair this light but the bill only amounted to $22.50, which was paid by the school. The schools of Sumter are under the Workmen's Compensation Act.

It is clear that the conventional relationship of master and servant did not exist between the Edmunds High School and appellant. There was no privity of contract between them. Compensation is claimed on the theory that appellant was a statutory employee of the high school under Section 7035-22 of the Code because the work being performed was a part of its "trade, business or occupation". Respondent denies that electrical repair work constitutes any part of its business and further contends that so far as the school is concerned, appellant was a casual employee, who is excluded from the terms of the Workmen's Compensation Act. Appellant asserts that Section 7035-22 does not exclude casual employees.

We shall first determine whether respondent would have been liable for compensation benefits if appellant had been directly employed by the school to repair this electrical fixture. Under many of the workmen's compensation acts, in order to exclude an employee from benefits, it is essential that he be one whose employment is both casual and also not in the course of the employer's trade or business. Unless both requirements are met, there is no exclusion. 71 C. J., Workmen's Compensation Acts, Section 180. In defining the word "employee" in Section 7035-2 (b) of our Act, there is excluded "persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer". Under the terms of Section 7035-16 (b), it is stated: "This article (act) shall not apply to casual employees * * *". In construing similar provisions in the North Carolina Act, the Supreme Court of that State held in *Johnson v. Asheville Hosiery Co.,* 199 N. C. 38, 153 S. E. 591, that in order to exclude an employee, the employment must be both casual and not in the course of the employer's trade or business. In *Berry v. Atlantic Greyhound Lines, Inc.,* 114 F. (2d) 255, a similar construction was given to our statute by the Circuit Court of Appeals of the Fourth Circuit. Subsequently, however, the question was directly presented to this Court

in *Jolly v. Atlantic Greyhound Corporation,* 207 S. C. 1, 35
S. E. (2d) 42. We declined to follow the construction
adopted by the North Carolina Supreme Court and the
Court of Appeals. It was there held that a casual employee
is excluded although the work being done is in the course of
his employer's business or occupation. Under this decision,
our inquiry is narrowed to the question of whether appellant
was only a casual employee so far as the school is concerned.

The courts of other states have encountered considerable
difficulty in the interpretation of the phrase "casual em-
ployee". Annotations 33 A. L. R. 1452; 60 A. L. R. 1195;
and 107 A. L. R. 934. Many of the decisions cannot be
reconciled. We had occasion to refer to some of the defini-
tions of the above phrase in *Ward v. Ocean Forest Club,
Inc.,* 188 S. C. 233, 198 S. E. 385, and *Jolly v. Atlantic
Greyhound Corporation, supra.* As well stated in *Pfister v.
Doon Electric Co.,* 199 Iowa 548, 202 N. W. 371, 373: "It
is less difficult to recognize such 'casual' employment
when it is presented in a given case than it is to lay down
a rule or definition that can become decisive of every case."
The Court there held that the purpose of the proviso exclud-
-ing casual employees "was to narrow or to withdraw the
application of the broader terms of the statute from those
'casual' employments, which are more or less incidental to
the life of everybody."

In *Jolly v. Atlantic Greyhound Corporation, supra,* claim-
ant was a general employee at a place of business which in-
cluded a store, a cafe, beds for lodging, and a filling station.
It was located in a rural area. A bus of the Atlantic Grey-
hound Corporation stopped at the filling station on account
of motor trouble. In an attempt to get the motor started,
claimant was asked to pour gasoline into the carburetor as
the driver operated the starter. While doing so, there was
an explosion in the motor, as a result of which claimant suf-
fered serious burns. It was held that even if claimant be con-
sidered an employee of the bus company, he was only a cas-
ual employee and not entitled to compensation.

In *Hoage v. Hartford Accident & Indemnity Co.*, 64 App. D. C. 258, 77 F. (2d) 381, an oranamental iron worker was engaged by a bank to repair a door in the grillwork in its banking house. While doing so, the door fell upon him, inflicting an injury which resulted in his death. It was held that there was no liability for compensation under the Longshoremen's and Harbor Workers' Compensation Act, § 1 *et seq.*, 33 U. S. C. A. § 901 *et seq.*, D. C. Code 1940, §§ 36-501, 36-502, 33 U. S. C. A. § 901 note, which excluded "any employment that is casual and not in the usual course of the trade, business, occupation, or profession of the employer." Under the same Act it was held in *Cardillo v. Mockabee*, 70 App. D. C. 16, 102 F. (2d) 620, that the employment of a tank and pump mechanic three or four times in four or five years to do repair work on gasoline station tanks was "casual" and not in the "usual course" of business of an operator of a filing station, and injuries sustained in doing such work were not compensable.

A case closely parallel to the instant one is *Board of Supervisors of Amherst County v. Boaz*, 176 Va. 126, 10 S. E. (2d) 498, 499. In that case the claimant, a carpenter, was engaged by the county authorities to repair a window of the court house, which needed some panes of glass and a new sash cord. In doing this work, a screwdriver used by claimant rebounded and struck his eye, injuring it to such an extent that its removal became necessary. It required about three hours to do the job for which claimant was paid $1.50. A statute of Virginia required the board of supervisors of each county to keep in repair the buildings. In denying compensation the Court said:

"We think that a mere statement of the employment and its incidents shows its nature to have been casual rather than periodic, regular or permanent. It was an act naturally incident to the ownership of property. It was what a careful and prudent owner or caretaker would do to prevent deterioration. The employment was casual and the claimant was a casual employee, but * * * this does not defeat his

claim if such employment was in the usual course of the trade, business, occupation or profession of the employer.

\* \* \*

"Is a county, or any political subdivision, as such, engaged in a trade, business, occupation or profession, the usual course of which would be found in the occasional repair of its public buildings? To ask the question is to answer it. Non-technical words in statutes are taken to have been used in their ordinary sense and acceptation. The word "trade' signifies barter and exchange, not restricted to commodities, but including transactions involving the medium of money. 'Occupation' is that activity in which a person, natural or artificial, is engaged with the element of a degree of permanency attached. 'Profession' is the method or means pursued by persons of technical or scientific training. The word 'business' implies some constant and connected employment as distinguished from 'an isolated act or two.' We cannot accept the notion that the legislature meant to apply these trade words to political entities, however fervently we may be urged to do so."

The decisions just reviewed from other jurisdictions went further than it is necessary for us to go in the instant case. Each held that not only was the employment casual but also that it was not in the usual course of the employer's business or occupation. Under the holding of this Court in the *Jolly case,* it is sufficient if it is shown that appellant was a casual employee and it is not necessary to determine whether he was engaged in the course of the business of the school. We have no hesitancy in concluding that his employment was merely casual. The cases of *Marchbanks v. Duke Power Co.,* 190 S. C. 336, 2 S. E. (2d) 825, and *Boseman v. Pacific Mills,* 193 S. C. 479, 8 S. E. (2d) 878, have no application to the question under consideration because it was not contended in either of these cases that the claimant was a casual employee.

It follows from the foregoing conclusion that if appellant had been directly employed by respondent to do this work,

he would not be entitled to compensation under the act because of the exclusion of casual employees. But it is argued that since appellant was employed by Rhame who was engaged to do this repair job, the liability of respondent must be tested by Section 7035-22, which it is claimed does not exclude casual employment. That portion of the section mentioned pertinent to this appeal reads as follows : "Where any person (in this section referred to as 'owner'), undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this article which he would have been liable to pay if the workman had been immediately employed by him."

Under the proposed construction of the above section advanced by appellant, an owner may be liable for compensation benefits to an employee of a contractor engaged to do minor repairs of a casual nature when he would not be liable under the Workman's Compensation Act if the injured employee had been hired directly by him. We find nothing in the terms of the Act requiring any such unusual result. It is unequivocally stated in Section 7035-16 (b) that the Act "shall not apply to casual employees". This exclusion applies to all sections of the Act. Under the express terms of Section 7035-22 (a), the liability of an owner for compensation to the employee of a contractor engaged to perform any work which is a part of the owner's trade, business or occupation is that "which he would have been liable to pay if that workman had been immediately employed by him." It certainly was not intended by this section to enlarge the liability of the owner for compensation beyond that which would have existed if the workman had been directly employed by him.

Not only is there nothing in the Act warranting the construction advanced by appellant, but there is no logical basis for it. In *Marchbanks v. Duke Power Co., supra* [190 S. C. 336, 2 S. E. (2d) 827], it was stated that the chief purpose of the foregoing section was "to protect the employees of subcontractors who are not financially responsible and to prevent employers from relieving themselves from liability by doing through independent contractors what they would otherwise do through direct employees." And in *Younginer v. J. A. Jones Construction Company,* 215 S. C. 135, 54 S. E. (2d) 545, 548, in discussing this section, the Court said: "The primary purpose was to protect the employees of any subcontractors who were not financially responsible." The burden which appellant now seeks to place upon respondent cannot reasonably be said to be within the purposes sought to be accomplished by Section 7035-22.

A contention somewhat similar to that advanced by appellant was made by an injured employee and overruled in *McConnell v. Johnston,* 139 Neb. 619, 298 N. W. 346.

While the basic purpose of the Compensation Act is the inclusion of employees and not their exclusion, *Yeomans v. Anheuser-Busch, Inc.,* 198 S. C. 65, 15 S. E. (2d) 833, 136 A. L. R. 894, we are not at liberty to adopt a construction which does violence to the specific requirements of the Act. *Jolly v. Atlantic Greyhound Corporation, supra.* To adopt the reasoning urged upon us by appellant would necessitate extending the meaning and effect of our compensation act beyond its fair scope and purpose.

The foregoing conclusion renders it unnecessary for us to determine whether the work being performed by Rhame was a part of the "trade, business or occupation" of the Edmunds High School.

The order appealed from is affirmed.

BAKER, C. J., and FISHBURNE, STUKES, and TAYLOR, JJ., concur.