Carlos A. **SINGLETON** and Shelby Singleton, Plaintiffs,

v.

**J. P. STEVENS & COMPANY, INC.,** Defendant and Third Party Plaintiff,

v.

**HUNTINGTON AND GUERRY ELECTRIC COMPANY,** Third Party Defendant.

Civ. A. No. 80–1780–14.

United States District Court, D. South Carolina, Greenville Division.

Jan. 22, 1982.

R. Frank Plaxco, Greenville, S.C., for plaintiffs.

W. Francis Marion, Jr., Paul J. Foster, Jr., Greenville, S.C., for defendant and third party plaintiff.

## ORDER

WILKINS, District Judge.

Plaintiffs, residents of South Carolina, brought this action based on diversity of citizenship, claiming actual and punitive damages resulting from injuries Mr. Singleton allegedly sustained in July, 1976 when he received electrical shock causing him to fall onto a concrete floor. At the time of his accident, Mr. Singleton was repairing a main electrical line owned by J. P. Stevens & Company, Inc. (hereinafter "Stevens") at its mill in Walterboro, South Carolina. Stevens raises three defenses. The third defense, which is the basis of the present controversy, alleges that the service provided by Mr. Singleton through his immediate employer, Huntington and Guerry Electric Company (hereinafter "Huntington"), was part of the trade, business or occupation of Stevens in maintaining its textile mill. Consequently, it asserts that Mr. Singleton's sole and exclusive remedy is found under The South Carolina Workmen's Compensation Law, § 42–1–10 *et seq.* of the Code of Laws of South Carolina (1976) and that Stevens is therefore not amenable to this common law action.

This matter comes before the Court on Cross-Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs moved for partial summary judgment in their favor as to the third defense on the ground that "there are no genuine issues of fact favorable to the defendant in support of its Third Defense" and that Mr. Singleton "was at most a casual employee within the provisions of said Act."

Stevens moved for summary judgment as to its third defense "on the basis that there is no genuine issue as to any material fact" that Mr. Singleton was a statutory employee of Stevens and that Stevens "is not a third party as defined under the Workmen's Compensation Act, § 42–1–10 *et seq.* of the South Carolina Code. . . ."

The issue before the Court is whether Mr. Singleton is a "statutory employee" of Ste-

vens, thereby guaranteeing but limiting his remedy to the benefits of the South Carolina Workmen's Compensation Law, § 42–1–10 *et seq.* of the Code of Laws of South Carolina (1976). The same issue viewed another way would be presented by asking whether Singleton would be entitled to workmen's compensation benefits from Stevens, assuming Huntington did not carry any. Since the answer is yes, Singleton may not also sue at common law. While this result may seem harsh in this or any particular given case, the overall benefits to all those injured during their employment is substantial.

The South Carolina Supreme Court has on numerous occasions defined in explicit terms when a person will be found a statutory employee. It is recognized that in federal court the question of a company's trade, business or occupation is often one of fact for the jury. *See Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), reversing *Blue Ridge Rural Electric Cooperative, Inc. v. Byrd*, 238 F.2d 346 (4th Cir. 1956). However, *Byrd* does not stand for the proposition that if there is no issue genuinely in dispute, the question of employment status must be nevertheless submitted to a jury. There being no issue genuinely in dispute as to Mr. Singleton's employment status, and both plaintiffs and defendant having moved for summary judgment, this matter should properly be decided by the Court since only an issue of law emerges. *Walker v. United States Gypsum Company*, 270 F.2d 857 (4th Cir. 1959).

## UNDISPUTED FACTS

1. J. P. Stevens & Company, Inc. owns and operates a textile mill in Walterboro, South Carolina. The electrical power necessary to operate the plant is supplied through heavy electrical lines owned and maintained by Stevens.

2. In March of 1976, problems developed in a main power line at the mill. Huntington electricians were dispatched to make repairs. At that time other problems were found. On April 23, 1976, a Work Order Contract (Exhibit A attached hereto) was entered into between Huntington and Stevens for repair of the main electrical lines. The Work Order Contract incorporated by reference the "General Terms and Conditions of Work Contracts" entered into between the parties on September 6, 1966. Part of the conditions called for under this agreement required Huntington to maintain workmen's compensation insurance for Stevens. Stevens has used this agreement continuously since 1966 for the numerous repair services provided by Huntington during the past 15 years.

3. The "5 KV power feeder" lines designated to be repaired are high voltage electrical lines owned, operated and maintained by Stevens. These power lines supply the entire electrical current necessary to operate this textile plant. Without the proper functioning of these electrical lines, the textile machinery and plant itself could not operate.

4. In 1976, Stevens employed one full-time electrician to handle the electrical maintenance at the Walterboro plant. His primary responsibility was to repair electrical motors, test electrical equipment, and make small runs of electrical cable which were not unduly time-consuming or needed more than one man to perform the necessary maintenance.

5. The repair of the "5 KV power feeder" lines required the services of more than one electrician and the use of tools which were not normally stocked by Stevens. It should be noted that Stevens' full-time electrician was capable of making these repairs, however, Stevens chose not to maintain regular employees for such repairs but instead hired independent contractors.

6. In order to avoid an unnecessary shutdown of its entire mill, Stevens designated that the work on the power lines be completed during the vacation week of July 4, when production employees were given

the entire week as a paid vacation. Huntington electricians worked during this week to complete these repairs.

7. Upon completion of the repairs, Stevens inspected and approved the work performed by Huntington.

8. The "5 KV power feeder" lines were an integral part of the mill business and essential in the operation of the business of the mill.

9. On July 8, Mr. Singleton, working as an employee of Huntington and doing repair work called for under the work order contract, received an electrical shock and was seriously injured.

10. As a result of his injuries while performing the called-for electrical repairs, he received workmen's compensation from the insurance carrier which Huntington had specified as providing workmen's compensation insurance in accordance with the "General Terms and Conditions of Work Contracts" agreement mentioned above.

## CONCLUSIONS OF LAW

The clear and numerous enunciations from the South Carolina Supreme Court setting forth the criteria necessary to find an individual a "statutory employee" under The South Carolina Workmen's Compensation Law is persuasive. Further inquiry beyond this case law is unnecessary for a determination in this action. The undisputed facts in the present matter so closely parallel existing state court decisions that this Court finds them conclusive on the issue.

In order for Mr. Singleton to elude the statutory bar of the Workmen's Compensation Law, he must *not* be performing or executing any work which is part of the owner's trade, business or occupation. Section 42–1–400 of the Code of Laws of South Carolina (1976) states in part:

When any person, ... referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person ( ... referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

Section 42–1–130 states in part:

The term "employee" means every person engaged in an employment under any appointment, contract of hire or apprenticeship, express or implied, oral or written, including aliens and also including minors, whether lawfully or unlawfully employed, but excluding a person whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer; ....

If an individual falls within the purview of the above sections, then the employee's sole and exclusive remedy is controlled by The South Carolina Workmen's Compensation Law and all other common law actions against the employer are barred. *See* § 42–1–540, Code of Laws of South Carolina (1976).

It is extremely difficult to lay down any hard and fast rule in determining what is a "statutory employee". However, the courts have set forth several essential factors in making this determination. The South Carolina Supreme Court since 1939 has consistently held that a person is performing the trade, business or occupation of the employer if the person contracts with the owner to perform a duty which is essential to the function of the owner's continued business despite the fact the owner may never have performed the same chore with his own employees. *See Marchbanks v. Duke Power Co.*, 190 S.C. 336, 2 S.E.2d 825 (1939); *Boseman v. Pacific Mills*, 193 S.C. 479, 8 S.E.2d 878 (1940); *Smith v. Fulmer*, 198 S.C. 91, 15 S.E.2d 681 (1941); *Kennerly v. Ocmulgee Lumber Company*, 206 S.C. 481, 34 S.E.2d

792 (1945). In *Marchbanks v. Duke Power Co.*, the Court found that an independent contractor who was hired to paint telephone poles on behalf of Duke Power was a statutory employee under the Workmen's Compensation Law on the basis that Marchbanks was engaged in part of the defendant's business, because the maintenance of utility poles was necessary to the distribution of electricity. Similarly, in *Adams v. Davison-Paxon Company*, 230 S.C. 532, 96 S.E.2d 566 (1957), the Court found that the plaintiff who operated the millinery department in the defendant's store was a statutory employee even though she was employed by a millinery company who supplied her to the defendant subject to the defendant's approval. It was also found that the millinery was an essential and integral part of the woman's ready-to-wear store. Many parallels can be drawn between these cases and the case at bar. However, the pertinent facts in *Boseman* are virtually identical to the facts in the present case and, therefore, controlling of the issue.

In *Boseman*, the defendant entered into a contract with one Jack Martin to paint a water tank which provided fire protection for the mill. The contract provided that the mill would supply the materials for the work but that Martin would furnish the tools, ropes and rigging. The contract further provided that Mr. Martin would be an independent contractor and in no sense an employee of Pacific Mills; however, all work performed by Mr. Martin or his agents would be subject to the inspection and approval of representatives of Pacific Mills. Mr. Martin hired Mr. Boseman to assist him in performing the contract. While executing his employment, Boseman was killed. The estate of the plaintiff brought an action for workmen's compensation benefits. The Court, finding Mr. Boseman was a statutory employee, stated:

> The tank was an integral part of the mill business. There was also testimony to the effect that the mill desired that the work on the inside of the tank be com-pleted as soon as possible so that its everyday, ordinary service, that of fire protection, could be resumed, it being shown that the mill depended upon this tank for such protection. The very nature of the work done by the mill, that of the manufacture of cotton into cloth, especially required the best of protection against fire. Hence, this tank was particularly necessary and essential in the operation and carrying on of the business of the mill. It, therefore, follows that the painting of the tank was such a part of the trade, business or occupation of the Pacific Mills as would constitute Martin a subcontractor, and thus render the mill liable to the beneficiary of Boseman for payment of compensation. 193 S.C. at 483, 8 S.E.2d at 880.

The salient facts in the present case parallel those relied upon in the *Boseman* case. Here Stevens was in need of having its electrical lines which operated the facility repaired. It contracted with Huntington to complete this work as quickly as possible over the 4th of July break in order to resume its regular production after the holiday. It is undisputed that these power lines were essential to the functioning of the plant. In fact, without these electrical lines the plant could not operate. The electrical lines were just as, if not more, essential to the operation of the Stevens plant as the water tank was to the Pacific Mills plant. As pointed out in *Boseman*, as well as in *Adams v. Davison-Paxon Company*, and the cases cited therein, it is of no moment that Stevens did not directly hire its own electricians to perform the repair work in question. It is undisputed that repair and maintenance of the electrical lines owned by Stevens were routine. The continued maintenance and repair of these electrical lines were absolutely essential to the continued operation of the textile plant.

The later decision of *Bridges v. Wyandotte Worsted Company*, 243 S.C. 1, 132 S.E.2d 18 (1963) further reinforces the view taken by the South Carolina Supreme

Court. Bridges, an employee of Collins Electric Company, was brought into the defendant's textile plant to replace an electrical line. These lines had been replaced on previous occasions and were customarily maintained by a qualified crew regularly employed by the defendant; however, because the regular employees of the defendant had put in an excessive amount of overtime and because the work was to be done on Sunday when the plant was not operating, the defendant contracted with an outside electrical company to make the needed replacements on its transmission lines. The maintenance and repair of this electrical system was part of the work done by the defendant in order to carry on its business of manufacturing woolen goods. While working on the electrical line, Bridges sustained injuries from electrical shock. Bridges was paid compensation by the workmen's compensation carrier of Collins. The lower court dismissed Bridges' common law action against the defendant on the ground that the court was without jurisdiction since Bridges' sole and exclusive remedy was under the Workmen's Compensation Law. The South Carolina Supreme Court affirmed. Similarly, in the present action an electrician was regularly employed by Stevens to maintain and replace small electrical runs within the plant. While he was qualified to repair the lines in question, he did not do so because of the increased manpower necessary to physically handle the larger cables.

The rationale of the Court's decision and the facts revealed in *Boseman* and *Bridges* when compared with the undisputed operative facts in this case leave no doubt that Mr. Singleton was performing part of the trade, business or occupation of Stevens at the time of his accident. Mr. Singleton is, therefore, a "statutory employee" of Stevens.

He argues the "statutory employee" status is inapplicable in the present situation, claiming to be merely a "casual employee". This contention is without merit, since he was unquestionably performing part of the trade, business or occupation of Stevens.

Mr. Singleton would have the Court interpret Section 42–1–130 as developing a two-step test in determining whether or not an individual is covered under workmen's compensation. Such an interpretation would be inconsistent with the provisions of Section 42–1–400 of The South Carolina Workmen's Compensation Law.

■ The purpose of excluding workmen's compensation benefits to casual employees is to protect the employer from claims by employees who perform jobs which are not in the usual course of the trade, business or occupation of the employer. Employment is casual when not permanent or periodically regular but occasional or by chance and not in the usual course of the employer's trade or business. *See Berry v. Atlantic Greyhound Lines, Inc.*, 114 F.2d 255 (4th Cir. 1940). Once it is determined that a party was performing part of the trade, business or occupation of an employer, the inquiry need go no further. Assuming, however, Mr. Singleton's contention is accurate, the undisputed facts reveal a course of conduct which goes well beyond the minimum isolated contacts relied upon by him to say he was a casual employee.

In *Benbow v. Edmunds High School*, 220 S.C. 363, 67 S.E.2d 680 (1951), the Court found the plaintiff to be a casual employee based upon the fact he was at Edmunds High School for a very short period of time on a one-time basis to repair a light fixture. The school maintained carpenters for the purpose of doing ordinary maintenance work, but these employees were unable to do the work which Mr. Benbow had been sent to perform. His total bill for services was $22.50. The Court rejected the plaintiff's contention that he was entitled to workmen's compensation from the defendant finding this to be an isolated incident. Upon careful view of all the cases cited in *Benbow*, the Court consistently relied upon a single isolated incident very minor in na-

ture when finding a claimant to be a "casual employee". Further, the Court, having found Benbow to be a casual employee, never addressed the issue of whether he was performing the trade, business or occupation of Edmunds High School. This is substantially different from Mr. Singleton's involvement with Stevens while employed with Huntington.

In the present case, Mr. Singleton was an agent for Huntington and had been such since the late 1960s. Further, Huntington has had since 1966 an ongoing relationship with Stevens at the Walterboro plant whereby numerous contracts for repair and replacement of electrical circuits had been entered into through the present time. The work performed on the electrical lines in the Stevens plant during the spring, summer and fall of 1976 were the lifeblood of the continued operation of the plant. The first contact with Stevens concerning the malfunction of the high voltage lines in question was in March of 1976, at which time two electricians from Huntington were dispatched to repair one line. It was then discovered that additional lines needed to be repaired. Consequently, a work order was entered into on April 23, 1976 for repair of the remaining damaged lines. This work was substantially performed during the July 4, 1976 vacation period, during which time the plaintiff was injured. Further, in

September of 1976, yet another contract was entered into for still additional repair to these electrical lines. Mr. Singleton, in performing the work called for under these contracts, was at the Walterboro plant continuously from July 3, 1976 until his injury on July 8, 1976. While Mr. Singleton would like to isolate himself claiming that he was there on a one-time basis, he cannot, as an agent of Huntington, divorce himself from the continued relationship which Huntington had prior to and subsequent to the date he received his injury. Huntington cannot be defined as a "casual employee" even under the most liberal interpretation of the term.

Since no question of fact exists, disposition of this case by summary judgment is proper. *See Mack v. R. C. Motor Lines, Inc.*, 365 F.Supp. 416 (1973). Mr. Singleton was performing a function essential to the operation of the Stevens mill and, as such, performing part of its trade, business or occupation which was not casual or occasional; therefore, his sole and exclusive remedy is found under the provisions of the South Carolina Workmen's Compensation Law. This law guarantees Mr. Singleton compensation for his injuries. It also precludes him from seeking compensation under the common law. Consequently, the present action is dismissed with prejudice.[1]

AND IT IS SO ORDERED.

1. This order makes it unnecessary to address other motions pending in this action.

## EXHIBIT A

WORK ORDER CONTRACT $\quad$ bb 3527
J. P. STEVENS & CO., INC.
Walterboro Plant
Walterboro, S.C.

JPS 1067's—I

WORK ORDER
CONTRACT NO. 159-67

TO  Huntington & Guerry Electric Co.
P. O. Box 3826
Park Place Branch
Greenville, South Carolina  29608

DATE  April 27, 1976

INVOICE IN  quadruplicate  COP.

You are authorized to perform the work as outlined by this Work Order Contract or as covered by your proposal dated __April 23, 1976__, which is attached to and becomes a part of this work order. The performance of the work shall be in accordance with this contract and subject to the General Terms and Conditions of Work Contracts which you have previously signed and which are hereby made a part of this Work Order Contract to the same extent and with the same effect as if fully set forth herein.

Furnish all labor and materials to repair 5 KV Power Feeder
as outlined in above quotation.

Copies: Messrs. J. M. Lyerly
S. H. Young
B. McDonald
H. Lewis
C. Bowen
W. Setzer

"Contractor agrees to comply with all applicable Federal, State and local laws, ordinances and regulations governing or pertaining to subject matter of this agreement, including but not limited to the Occupational Safety and Health Act of 1970 as the same may be amended from time to time together with all rules and regulations promulgated thereunder."

### (coordinate with Mr. A. M. Dempsey)

The work shall be commenced on __a. s. a. p.__ and completed by __a. s. a. p.__. If completion is delayed by causes beyond Contractor's control, Owner may cancel this contract on 30 days written notice and Contractor shall be paid work actually completed prior to such cancellation. Owner shall pay Contractor for performance of this fixed price contract the sum _____(\$_____)DOLLARS, subject to the additions or deductions provided hereunder, or Owner shall pay Contractor for his actual cost of labor and material, plus a_____ (of actual cost) fee for overhead and a_____%(of actual cost) fee for profit. The combined fee shall not exceed_____ Eleven-Thousand, Five-Hundred and Seventy Eight and 60/100-----(\$ 11,578.60_____), or should _____(\$ _____).

AMOUNT OF THIS WORK ORDER  \$ 11,578.60
AMOUNT ORIGINAL CONTRACT  \$ _____
AMOUNT PREVIOUS EXTRAS  \$ _____
REVISED TOTAL COST  \$ _____

CHARGE TO
PROJECT NO.  159-5218-X

ITEM NO._____

### ACCEPTED

HUNTINGTON & GUERRY ELECT. Co.
CONTRACTOR

BY  Glen M. Rice

TITLE  Pres.

(please sign and
return one copy
to the Slater
Plant).

J. P. STEVENS & CO., INC.

BY  A. M. Dempsey

TITLE  A. M. Dempsey
Division Engineer
Glass Fabrics Division