16094

WATSON v. WANNAMAKER & WELLS, INC., *ET AL.*
(48 S. E. (2d) 447)

*Mr. Stephen Nettles,* of Greenville, for Appellants, 

*Messrs. Herbert N. Felton* and *Poliakoff & Poliakoff,* of Spartanburg, for Respondents, 

June 17, 1948.

FISHBURNE, J.: This cause was heard in the circuit court of Spartanburg County on appeal by the defendants, em-

ployer and insurance carrier, respectively, from an award made by the South Carolina Industrial Commission in favor of the plaintiff. The plaintiff is the widow of L. D. Watson, who sustained an injury to his head on November 17, 1944, resulting from a fall. At the time of his injury he was working at Weldon, North Carolina, for the defendant-employer, Wannamaker & Wells. He died on February 7, 1945, and the plaintiff thereafter filed claim for compensation for his death with the South Carolina Industrial Commission.

On this appeal, the assignments of error are to the affirmance by the lower court of the findings of fact of the Commission that (1) the contract of employment between the employer and the plaintiff's deceased was made in South Carolina and was not expressly for service exclusively outside of the State; and (2) the evidence was sufficient to support an award for claimant because (a) the injury resulted from an accident arising out of and in the course of employment, and (b) the death of the employee was accelerated by such injury.

The appellants contend that the South Carolina Industrial Commission was without jurisdiction of the claim because the contract of employment as shown by the evidence was made in North Carolina exclusively for service in that State.

Where the jurisdiction of the Industrial Commission to hear and consider a claim for compensation under the provisions of the South Carolina Workmen's Compensation Act, Code 1942, § 7035-1 *et seq.,* is challenged by an employer, on the ground that such employer is not subject to the provisions of the Act, the findings of fact made by the Commission, on which its jurisdiction is dependent, are not conclusive. The circuit court, and this court, on the appeal of either party to the proceeding, has both the power and the duty to consider all the evidence in the record, and find therefrom the jurisdictional facts, without

regard to the finding of such facts by the Commission. *Tedars et al. v. Savannah River Veneer Co. et al.*, 202 S. C. 363, 25 S. E. (2d) 235, 147 A. L. R. 914. As to disputed facts which do not go to the jurisdiction, we are bound by the finding of the Commission, if there is any competent evidence to sustain such finding. *Knight v. Sheperd,* 191 S. C. 452, 4, S. E. (2d) 906.

Section 36 of the South Carolina Workmen's Compensation Act, section 7035-39, Code provides "Where an accident happens while the employee is employed elsewhere than in this State which would entitle him or his dependents to compensation if it had happened in this State, the employee or his dependents shall be entitled to compensation, (a) if the contract of employment was made in this State, (b) if the employer's place of business is in this State, (c) and if the residence of the employee is in this State; (d) provided his contract of employment was not expressly for service exclusively outside of the State * * *." (Letters added.)

It is conceded here that the employer's place of business is in this State and that the residence of the deceased emploeyee was in this State. On the question of jurisdiction the issue is raised that the contract of employment was made in North Carolina and expressly for service to be rendered exclusively in that State.

We deal first with the undisputed facts. On or about May 1, 1944, L. D. Watson, the deceased employee, and his son, E. C. Watson, both of whom were carpenters by trade, residing at Spartanburg, South Carolina, dispatched a telegram to Wannamaker & Wells, who are general contractors with business headquarters at Orangeburg, South Carolina, inquiring about employment. They were promptly advised by Wannamaker & Wells, by telegram, that work was available for one carpenter at Cheraw and for two at Chester, South Carolina. The Watsons chose the employment at Chester and promptly reported there to Mr. W. G. Alber-

gotti, who was the superintendent in charge of construction at that point. Albergotti, as superintendent, was fully empowered to contract with the Watsons, and they were employed by verbal agreement at Chester at an agreed wage. No mention was made as to the duration of the work or concerning the place or places they would be required to perform the services contracted for other than that they would commence immediately at Chester. The father and son continued to work at Chester until about September 1, 1944, a period of approximately four months. The carpentry work upon which they were engaged was finished at that time and they thereupon returned to their home in Spartanburg.

E. C. Watson, the son, testified for the claimant. Some of the evidence given by him is in dispute. He stated that upon the completion of their work at Chester Mr. Albergotti, the superintendent, told him and his father, the deceased, that their services were needed by Wannamaker & Wells on a construction job then under way at Weldon, North Carolina, and that he instructed them to report there for work. "Mr. Albergotti told us to go to Weldon, North Carolina * * * I didn't ask him, he told us * * * We had to wait in Spartanburg until he sent for us". Just before leaving Chester they requested of Mr. Albergotti a release from their employment with Wannamaker & Wells but he refused to give them such release, and they had to agree to proceed to Weldon as employees of Wannamaker & Wells on the construction work there before Mr. Albergotti would furnish them with gasoline coupons for the trip. They paid for the gasoline.

J. C. Edwards, general manager of the employer, testified that Albergotti, as superintendent at Chester, was authorized to transfer employees working under him to other locations where they were needed, subject, however, to reasonable objection by the superintendent in charge of the operations to which the transfer was made. That for two or three years during this period Wannamaker & Wells re-

fused to give releases to employees who were needed in the construction work of the corporation, although he realized that the law required that the releases be given upon termination of employment. He assigned as reasons for refusal, "So much trouble with labor, keeping labor, labor turnover" (The law referred to was that applicable during war time conditions in 1944).

When the Watsons reached Weldon, North Carolina, they reported there to W. B. Gowan, the employer's superintendent in charge, and told him that they had been working for Wannamaker & Wells at Chester. Mr. Gowan already knew this. They went to work under Mr. Gowan by agreement at substantially the same wage they had received at Chester. They were not informed as to how long the work there would continue or whether they would be transferred or released when it was completed. It was while working at Weldon, about three months thereafter, that L. D. Watson, deceased, sustained the fall which it is claimed caused or accelerated his death.

While Mr. Gowan was testifying as a witness for the appellants the following took place:

"The Court: When a man comes on a job do you ever transfer him to another job while that job is still going on?

"The Witness: If I don't need that particular man and they need him on some other job, I do.

"The Court: In other words, whenever his work runs out you transfer him to another job where work like that is available?

"The Witness: Yes, sir."

The lower court, affirming the finding of the Industrial Commission, held that there was only one contract of employment, as opposed to the contention of appellants that there were two contracts—one made at Chester and one made at Weldon, North Carolina. And that under the single initial contract made at Chester, the em-

ployment was not expressly for service exclusively outside of the state of South Carolina. We think there is ample evidence to support this conclusion.

While it is true that the inference may be drawn that the Watsons, upon completing their assignment of the work at Chester, desired to seek work with some other employer, they were not free to do so. As shown by the evidence, they requested a release terminating their employment. Such release was not agreed to and was refused, although the law in force at that time required the employer to give such release if the contract of employment had been terminated: The Watsons could not obtain employment with other contractors unless they had this release, and it is quite evident that Wannamaker & Wells knew this. It is logical to conclude that there could have been no other reasonable purpose in refusing to give the release except to continue the Watsons in the employ of Wannamaker & Wells. By refusing this release, as a practical matter, the employer retained and exercised dominion and control over the Watsons, so far as their labor was concerned, during the intermission of ten days after they left the Chester job and before reporting for work at Weldon. Mr. Albergotti testified that he terminated the contract when the work was completed at Chester, and denied that the Watsons requested their release, but he admitted that he would not have signed the application for gasoline coupons had he not been assured by them that such gasoline would be used in transporting them to the employer's construction work at Weldon.

In summing up the circuit judge stated: "As I view the record the whole scheme of operations was done for the benefit of Wannamaker & Wells to keep employees available for the services desired of them at any place where the corporation did or might have had construction contracts and work going on thereunder. The very nature of the business in which the defendant, Wannamaker and Wells, Inc., was engaged; the character of the work being performed by the

deceased for the employer at the time of the alleged accident; the economic conditions and circumstances prevailing during the period of employment of deceased—all tend to defeat the contention of appellants and support the position of respondent here. After reviewing and maturely considering the evidence of the case, I conclude that the record therein contains abundant evidence to sustain the jurisdiction of the South Carolina Industrial Commission over this claim."

We concur with the conclusion reached by the lower court. In our opinion, on this phase of the case, the respondent has sustained the burden of proof.

We are also of the opinion that there was competent evidence to warrant the lower court in affirming the findings of the Industrial Commission that the fall of the deceased was due to an accident arising out of and in the course of the employment, and that such accidental injury contributed to or hastened his death.

We will not undertake a detailed analysis of the testimony on this issue. There is evidence tending to prove that the deceased, while at work at Weldon on November 17, 1944, about 9:00 p. m., slipped and fell, striking his head on a log and that immediately thereafter blood commenced to seep from his left ear. He was treated for a week or more at a hospital, was then taken to his home at Spartanburg, and shortly thereafter committed to the State Hospital where he died on February 7, 1945. The doctors, several of whom testified, pronounced the cause of death cerebral arteriosclerosis. There was testimony for the claimant that the deceased had made no complaint prior to his accidental fall other than that he felt tired, but he had not been sick. However, disregarding this, and assuming that he, prior to the fall, was suffering from cerebral arteriosclerosis, which the doctors said might be of very gradual development, we can draw but one reasonable conclusion from the medical testimony. This testimony was to the effect that if the deceased

suffered a fall, resulting in an injury to his head, as shown by the evidence, such an injury would have hastened and activated the cerebral arteriosclerosis and accelerated his death. The medical testimony supports the conclusion that the accident was materially related to and contributed to the death of the deceased. Cases illustrating this point are *Holly v. Spartan Grain & Mill Co.,* 210 S. C. 183, 42 S. E. (2d) 59; *Cromer v. Newberry Cotton Mills,* 201 S. C. 349, 23 S. E. (2d) 19; *Branch v. Pacific Mills,* 205 S. C. 353, 32 S. E. (2d) 1, and *Cole v. State Highway Department,* 190 S. C. 142, 2 S. E. (2d) 490.

Judgment affirmed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.