14154

BENEDICT v. MARKS SHOWS, INC., *ET AL.*

(182 S. E., 299)

*Messrs. M. J. Fulton* and *R. K. Wise,* for appellants,

*Messrs. F. Ehrlich Thomson* and *J. M. Cantey,* for respondent,

November 1, 1935.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This is an action for damages for personal injuries. It was alleged that Benedict, on November 4, 1934, while in front of a service station in the City of Columbia, was struck, knocked down, and painfully and seriously injured by a truck owned by the defendant Marks Shows, Inc., and operated by Lineburg, its agent and co-defendant; "that the said injuries to the plaintiff were caused by the negligent, willful, careless and wanton acts of the defendants in driving said automobile or truck out of its position and on to plaintiff who was standing beside his own car; in failing to keep control of direction and machinery and steering apparatus of said automobile; in moving and operating the wrong levers in machinery of said automobile; in moving backwards suddenly without warning at a high, excessive and dangerous rate of speed; in failing to keep a lookout to safeguard plaintiff and public from being injured, and in caus-

ing said truck while parked to move backwards against the plaintiff without warning, with a heavy and unwielding trailer attached and in striking and injuring plaintiff as set out above."

The defendants admitted by their answer that "an accident occurred on or about the date mentioned in the complaint between truck belonging to Marks Shows, Inc., and the plaintiff," but denied that it was caused by any negligence or willfulness on their part; but, on the contrary, asserted that it was due to plaintiff's own carelessness and contributory negligence. The trial of the case in the Richland County Court resulted in a verdict for $2,800.00 actual and $200.00 punitive damages. A motion for a new trial was granted by the county Judge unless the plaintiff would remit on the record the amount of punitive damages awarded by the jury. The order of the Court was complied with, and the defendants thereafter appealed from the judgment duly entered.

The appellants, by Exceptions 1, 2, and 3, charge the trial Judge with error in refusing their motions for a nonsuit and for a directed verdict, made upon the grounds (a) that there was an entire absence of testimony as to any actionable negligence on the part of the defendants, and (b) that what happened, as shown by the facts and circumstances, was purely an accident.

It was admitted that the truck in question, with trailer attached, was the property of the defendant Marks Shows, Inc., and was being operated at the time by the defendant Lineburg, an employee of the corporation.

D. E. Harmon testified that he was a "gasoline operator" at the filling station where the plaintiff was injured; that the station had three tanks and that the truck stopped at the first one, and while parked there Lineburg had the hood up doing something to the motor; that during the time the plaintiff drove in and stopped his automobile at the second pump for gasoline, and that while he was being served, the truck

was started, ran backwards, and Benedict was struck by the trailer and knocked down.

T. W. Hancock, a witness for the plaintiff, stated that he is an employee at the filling station in question, and that he was on duty the morning of November 4, 1934, and "recalled about the truck of Marks Shows, Inc., and trailer, and also the automobile of Mr. Benedict being at the filling station at the same time;" that he estimated that the truck had been there about thirty minutes before the plaintiff came, and that the driver of the truck was engaged in working on the motor, which was not running; that the truck was about a 2-ton G. M. C., with a large trailer. He further stated that "I had just waited on Mr. Benedict and he had given me the money and I went in to make the change. I turned around about three (3) feet from where I saw the truck start backwards. I heard him yell and I looked around and he was pulling himself up—I helped pick him up and set him on the side of the car"; that the truck went backwards pretty rapidly, and was "stopped by the trailer causing the motor to stall down"; that at the time nobody was sitting at the wheel or driving control, but a lady was "sitting on the opposite side"; and that Benedict was standing by his car and the trailer caught him against his back fender on the right-hand side. The witness also stated that he saw the truck "cranked by Mr. Lineburg with his hand while standing on the outside," and that it was started in that way; that the motor was not running and that he was positive that Lineburg did the cranking; that "after the truck started backwards the guy that cranked the car hollered to the lady sitting in it, but she didn't do anything"; and that the truck moved about ten or fifteen feet from where it was parked to where it hit the plaintiff.

The testimony above referred to, and other evidence contained in the record made the question of negligence on the part of the defendants one for the jury. As has been declared, negligence "is the omission to do some-

thing which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do." 12 R. C. L., 26. Lineburg parked the truck, with the large trailer, in a public filling station and kept it there for some time apparently for the purpose of working on the motor. The station was a place where people were going from time to time, as they had a right to do, to purchase gasoline, and, in order to do this, they were compelled to stop near the truck and trailer and to pass in front of and behind them. Lineburg knew, or should have known, all of this, and he was bound to exercise such care in the circumstances as would be required of a reasonable, prudent man, under a similar state of facts. The jury could infer from the testimony that he had left the truck in gear and that it was through his negligence in cranking it while so that the plaintiff was injured. In short, as more than one inference could be drawn from the evidence, the Court properly refused to grant a nonsuit or to direct a verdict on these grounds.

By Exception 5, error is imputed to the trial Judge "in refusing to direct a verdict for the defendants on the ground made, that the uncontradicted evidence shows that the truck was started by the wife of Mr. C. R. Lineburg whose wife was not an agent or employee of Marks Shows, Inc." If this question were properly before us, it could not be sustained, for the reason that the "uncontradicted evidence" does not show that the truck was started by the wife of Lineburg. He thought that his wife might have started it, but this was only conjecture on his part. To quote his exact words: "The only way I know is my wife might have done it. She knows nothing about driving it and she might have done it accidentally."

Complaint is also made of the refusal of the Court to direct a verdict for the defendants as to punitive damages. Even if this were error, as contended, we

think it was harmless. The respondent, complying with the order of the county Judge granting a new trial *nisi,* remitted on the record all punitive damages, the sum of $200.00, awarded him by the jury.

When the plaintiff was on the stand, he was asked if he did not help his wife with her little greenhouse. This was objected to by counsel for the defendants on the ground that the suit was one for damages for personal injuries, and that no property damage or loss could be proved. The Court overruled the objection, and the witness stated that he did help her with the shrubbery, but that he had to hire somebody else to tend to it while he was disabled. The trial Judge is charged with error in admitting this testimony. As the exception, however, raising the question is not argued in the brief of counsel for the appellants, the Court deems it abandoned. Moreover, what the plaintiff said in response to the questions asked him did the defendants no harm.

It is earnestly argued that the verdict for actual damages was grossly excessive, and that "the trial Judge abused his discretion in not granting a new trial absolutely or a trial *nisi,* requiring the plaintiff to remit on the record a portion of the verdict." This question is generally left to the good judgment of the trial Judge, and we cannot say, from an examination of the record before us, that he abused his discretion. Furthermore, we are inclined to the view that he was correct, as the testimony shows that the plaintiff received painful and serious injuries.

Nor do we think there is any merit in the contention that there could be no judgment entered against the defendants jointly. In 2 C. J., 848, we find the following: "The liability of the principal for torts committed by his agent is not limited to torts which he has expressly authorized or directed; he is liable for all the torts which his agent commits in the course of his employment; and if the agent commits a tort in the course of his employment the

■■■■■ ■

principal is liable therefor even though he was ignorant thereof and the agent in committing it exceeded his actual authority or disobeyed the express instructions of his principal, and although the agent acted fraudulently or with bad faith toward his principal."

It is clear from the rule above stated and from numerous decisions of this Court, that judgment, under the allegations and proof, was properly entered jointly against the .appellants.

The judgment of the Richland County Court is affirmed.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.