John G. MacMULLEN, Plaintiff,

v.

SOUTH CAROLINA ELECTRIC AND
GAS COMPANY, Defendant.

Civ. A. No. AC–440.

United States District Court
E. D. South Carolina,
Columbia Division.

Dec. 20, 1961.

J. P. Mozingo, III, Benny R. Greer, Archie L. Chandler, Darlington, S. C., for plaintiff.

Cooper & Gary, Gene V. Pruet, Columbia, S. C., for defendant.

TIMMERMAN, Chief Judge.

### FINDINGS OF FACT

1.

The defendant, South Carolina Electric and Gas Company, in June of 1958, was in the process of having constructed a new steam generating plant for the manufacture of electricity near Irmo, South Carolina, known as McMeekin Sta-

tion, under the general supervision, direction and planning of Gilbert Associates, Inc., of Reading, Pennsylvania.

Gilbert Associates, Inc., consultants for the defendant, on November 27, 1956, made a purchase order contract with Fairfield Engineering Company for the furnishing and installation of continuous automatic coal handling equipment at this Station in the amount of $367,-062.00. (Ex. R) This equipment made up a system whereby coal was handled and transferred in several phases from railroad cars into the generating plant. Fairfield Engineering Company, specialists in supplying and installing automatic transfer systems for various products, including coal, made a subcontract with Trans-Weigh Company, of Pennsylvania, to supply and furnish an engineer to install, adjust, calibrate and instruct defendant's personnel in the use of electronic weighing and measuring equipment that would weigh coal as it passed through the coal handling system for less than $3,000.00. (Ex. L) Trans-Weigh Company specializes in supplying, installing and calibrating electronic weighing equipment.

The plaintiff, John G. MacMullen, an employee of Trans-Weigh Company, went to the McMeekin Station on the morning of June 11, 1958, for the purpose of adjusting, calibrating and instructing company personnel in the use of the coal weighing equipment.

### 2.

On the morning of June 13, 1958, the plaintiff had completed his work on the weighing equipment supplied by his employer, Trans-Weigh Company, and had placed the equipment in proper operation.

Some equipment supplied by a company other than Trans-Weigh Company that was a part of the coal transfer system was defective, and the plaintiff was asked by an agent of the defendant on duty at the McMeekin Station whether he was familiar with the defective equipment, and whether he could correct the existing defects. The plaintiff informed this agent that he was familiar with the type of equipment involved and that he could correct the defects, but that this was not equipment of his company, and that he did not wish to work on equipment of another company. In view of the fact that an engineer from the other company could not be brought to the site within a short time, the plaintiff was prevailed upon to repair the defective equipment. Plaintiff consented to repair the equipment upon three conditions: (1) that the defendant agree to furnish all necessary material; (2) that the defendant furnish the necessary personnel to do certain work involved; and (3) that the defendant would de-energize and keep the flow of electric current from the equipment involved while plaintiff worked on it. These conditions were agreed to by Engineer M. C. Johnson, who was supervisor of relays and controls for the defendant at the McMeekin Station.

### 3.

The defective equipment consisted of a system of potentiometers and a drive motor located inside the plant building, and more particularly located inside a metal cabinet approximately 21″ x 21″ x 29″ in size. The defendant assigned two employees, one an electrician and the other a mechanic, to work with the plaintiff in repairing and adjusting the defective equipment. Some preliminary work was done in the morning of June 13, 1958, toward preparing certain equipment and materials for installation in the cabinet. After lunch, at approximately 12:30 P.M., the plaintiff was informed that the electricity had been turned off and that the equipment to be adjusted had been de-energized. The mechanic, L. M. Shealy, installed some brackets inside the metal cabinet as instructed by the plaintiff and did work in the cabinet for a period of approximately fifteen to twenty minutes. The plaintiff then undertook to make the necessary adjustments to the equipment inside the cabinet, and had been so occupied for perhaps five minutes when suddenly he received an electric shock. The mechanic, L. M.

Shealy, upon observing that plaintiff had received a shock, and that plaintiff's arms and hands were in contact with the equipment, touched the plaintiff with the back of his hand to ascertain whether any current was flowing from plaintiff, and Shealy found that he received no electric voltage by touching the plaintiff. Mr. Shealy then attempted to pull the plaintiff loose from the equipment but was unable to do so, at which time the electrician, A. C. Turkett, came to Mr. Shealy's assistance, and the two of them were able to dislodge the plaintiff from the equipment. The plaintiff was at that time drawn up and was not breathing and mucus was flowing from his mouth. The plaintiff was revived by means of artificial respiration given by Mr. Shealy, and was taken to a doctor's office in a nearby town for treatment. The plaintiff, after visiting this physician, returned to the plant site, and then went to the airport in Columbia and returned to his home in Pennsylvania by airplane.

The defendant, through its employees, had control of the switches which allowed and regulated the flow of electricity into the equipment which was being repaired. The plaintiff was not familiar with the various circuit control systems within the plant or the main control center inside the plant which controlled the flow of energy into the equipment on which he was working. There was no necessity for having electric current running through the equipment at the time plaintiff received his injury. The plaintiff had ascertained by checking certain dial indicators that the equipment was de-energized before he began his work on the equipment.

On the day that plaintiff was injured, and prior thereto, the McMeekin Station had been put in partial operation, and the coal transfer system had been operated manually by turning the necessary switches on and off, in view of the fact that the electronic equipment which operates the system automatically had not been adjusted and calibrated.

4.

I find that the defendant, South Carolina Electric and Gas Company, was negligent, through its agents, servants and employees, in causing or allowing the equipment on which the plaintiff was working to be energized without notice to the plaintiff while he was in the act of making adjustments to the equipment. I find that the defendant was negligent in not taking precautionary steps to prevent the electric current from being turned on while plaintiff was working on the equipment.

5.

I find that the plaintiff requested the proper supervisory personnel of the defendant to shut off the flow of electric current into the equipment involved and to prevent the equipment from becoming re-energized until he had completed his work, and that he was assured by defendant's agent that this would be done. The plaintiff checked certain dial indicators to ascertain that the current had actually been turned off on the equipment. I find, therefore, that the plaintiff was not contributorily negligent in bringing about his own injury. He could not do the work and at the same time watch the switches.

6.

In view of the fact that the plaintiff took the necessary action to remove any risk that he might be injured while working on the equipment involved, I find that he did not assume the risk and hazard of working on the equipment, and would not, therefore, be precluded from recovery by any assumption of risk. There is no evidence which suggests that plaintiff had any reason to suspect that electric current would be on the equipment with which he was to work.

7.

I find that plaintiff was not engaged in performing a part of the trade, business or occupation of the defendant; that the plaintiff was not a statutory employee of the defendant, and that his

recovery and remedy are, therefore, not limited by the South Carolina Workmen's Compensation law.

The overall planning and construction of the steam generating plant at Irmo, South Carolina, was under the direction and supervision of Gilbert Associates, Inc. The entire operation of furnishing and installing the automatic coal handling system was contracted to the Fairfield Engineering Company who are specialists in this field. The defendant has never undertaken on its own the planning and construction of a steam generating plant. The defendant has never done its own installation of a coal handling system at any station. The defendant has never undertaken to manufacture, install and put into operation an automatic electronic coal weighing system. This is a very specialized field, and, according to the evidence, there are only three companies other than Trans-Weigh Company in the United States that supply, install and calibrate coal weighing equipment. I find from the evidence that the defendant had neither the facilities nor the personnel to plan and carry out the construction of a steam generating plant, and especially that the defendant had neither the facilities nor the personnel to construct, install and put into operation an automatic coal handling system, and that neither of these undertakings are part of the usual trade, business and occupation of the defendant. It is true that according to the charter under which the defendant operates it would have the power and authority to enter into the business of constucting electric generating plants and the various components thereof. However, the record shows that the defendant has not entered the business of constructing electric generating plants nor of installing automatic coal handling equipment, either independently or as a component part of other construction work. As to the actual trade, business and occupation in which the defendant is engaged, the Certificate of the South Carolina Industrial Commission offered in evidence by the defendant as to employers' compliance with the Workmen's Compensation law certifies that the South Carolina Electric and Gas Company is "engaged in the business of operation, purchase, transmission, distribution sale of electric energy and manufacturing gas". (Ex. T) The contention of the defendant, therefore, that the plaintiff's sole remedy is under the Workmen's Compensation law is without merit.

8.

Plaintiff was thirty-three years of age at the time of his injury, and at the time of the trial his life expectancy, according to the South Carolina mortality table, was 33.44 years. Prior to the injuries suffered his health was good and in addition to his work he engaged in a number of recreational activities. Plaintiff has had surgery performed on both his arms in an attempt to restore some of the functional use of the arms that was lost as a result of the electrical shock. He has permanent disability of between sixty-five and seventy-five percent in both of his arms. He has a general bodily disability of approximately sixty-five percent. He is disabled from doing manual labor and his abilities to work in a supervisory nature have been greatly limited. The prognosis for the future is grave. He has been caused to endure a great deal of pain, and has suffered extensive and permanent bodily disfigurement. His ability to engage in recreational and social activities is practically nil because of his physical condition. His working years, even in a limited capacity, have been shortened by approximately fifteen years. His earning capacity prior to his injury and at present in his limited supervisory position is Nine Thousand ($9,000.00) Dollars. According to the evidence I find that he will suffer a great loss of earning capacity. There is strong probability that he will not be able to work past the age fifty. This future loss, of course, should be reduced to present day value in assessing damages. The reduced value of the dollar should also be kept in mind. I find that the plaintiff has incurred

extensive medical expense and most probably will continue to incur substantial medical bills in the future.

9.

Plaintiff's employment status with the defendant at the time of his complained of injuries could have been no more than that of a "casual employee". He had never done like work for the defendant before and there is nothing in the evidence to indicate that either the plaintiff or the defendant contemplated that such a relation would continue in the future.

10.

From the foregoing I find that the plaintiff has suffered damages by reason of the negligence of the defendant in the sum of Seventy-five Thousand ($75,-000.00) Dollars.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this action.

2. The rights and duties of the parties are governed by the laws of the State of South Carolina, the place where the injuries to the plaintiff occurred.

3. Negligence is the failure to do what a reasonably prudent person would have done under the same or like circumstances, or it is the doing of something which an ordinarily prudent person would not have done under the same or like circumstances. Jones v. American Fidelity and Casualty Company, 210 S.C. 470, 43 S.E.2d 355; Benedict v. Marks Shows, 178 S.C. 169, 182 S.E. 299. Otherwise stated, negligence is the failure to use due care, or it is the failure of a person to use that degree of care which a person of ordinary intelligence and ordinary prudence reasonably would be expected to use in a situation with which he is confronted. Lundy v. Southern Bell Tel. and Tel. Co., 90 S.C. 25, 72 S.E. 558.

4. A person who is injured while working for another is not limited to relief provided in the Workmen's Compensation law of South Carolina if he was not engaged in work which was a part of the usual trade, business or occupation of his employer. Marchbanks v. Duke Power Co., 190 S.C. 336, 2 S.E.2d 825; Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953.

5. Plaintiff as a casual employee of defendant on the occasion in question is not entitled to the benefits of the Workmen's Compensation law nor is the defendant entitled to its protection. Jolly v. Atlantic Greyhound Corp., 207 S.C. 1, 35 S.E.2d 42.

6. Applying the principles of law applicable to the case, I conclude that the injuries and damages sustained by plaintiff were directly and proximately caused by the negligence of the defendant.

7. The plaintiff was not contributorily negligent nor did he assume the risk or hazard of the work under the facts of this case.

The plaintiff is entitled to recover from the defendant the sum of Seventy-five Thousand ($75,000.00) Dollars and the costs of this action.

It is so Ordered.